

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    1:23-CR-00077 JLS (MJR)

                                             REPORT, RECOMMENDATION
                                             AND ORDER

        v.


JAMES WALKER a/k/a "Tommy,"

                    Defendant.
_____

        This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr.

pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon

dispositive motions. (Dkt. No. 3)

## BACKGROUND

        Defendant James Walker ("defendant" or "Walker") is charged with: (1) conspiracy

to possess with intent to distribute, and to distribute, 5 kilograms or more of cocaine, from

February 2018 through July 25, 2018, in violation of Section 846 of Title 21 of the United

States Code; (2) possession of 5 kilograms or more of cocaine with intent to distribute,

on July 25, 2018, in violation of Sections 841(a)(1) and 841(b)(1)(A) of Title 21 of the

United States Code and Section 2 of Title 18 of the United States Code; and (3) money

laundering conspiracy, from February 2018 through January 25, 2018, in violation of

Section 1956(h) of Title 18 of the United States Code (the "Indictment"). (Dkt. No. 1) The

Indictment was filed on July 18, 2023. (*Id.*)

        On November 28, 2023, defendant filed various omnibus discovery demands as

well as a motion to dismiss the Indictment and motions to suppress evidence. (Dkt. No.

15) The Government filed responses to defendant's motions and omnibus demands on December 11, 2023. (Dkt. No. 12) The Court held oral argument on January 9, 2024, at the conclusion of which the Court set a deadline of January 26, 2024 for defendant to submit supplemental briefing and/or an affidavit in support of his motion to suppress statements. (Dkt. No. 18) The Government was to submit a response by February 9, 2024, upon which date the Court considered the matter submitted. (*Id.*)

## DISCUSSION

The Court will first address defendant's motion to dismiss the Indictment and motions to suppress evidence before turning to his non-dispositive omnibus discovery demands and the Government's request for reciprocal discovery.

### *Motion to Dismiss the Indictment*

Defendant moves to dismiss the Indictment on the basis of excessive pre-indictment delay, in violation of his due process rights under the Fifth Amendment.[1] (Dkt. No. 15, pgs. 3-6) For the following reasons, the Court recommends that defendant's motion to dismiss the Indictment be denied.

An indictment brought within the statute of limitations "has a strong presumption of validity." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). Thus, a defendant faces a "heavy burden" in seeking dismissal based on pre-indictment delay. *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990). The Second Circuit has held that, in order

---

[1] As noted above, defendant was indicted on July 18, 2023, and charged with conduct that occurred between the period of February 2018 and July 25, 2018. The statute of limitations for all of the counts set forth in the Indictment is five years. *See* 18 U.S.C. § 3282. Thus, the charges fall within the statute of limitations period. Defendant does not concede that the alleged conspiracy actually continued through July 25, 2018, but agrees that the Indictment was returned within the five-year statute of limitations period. Thus, defendant is not making a statute of limitations argument in support of his motion to dismiss the Indictment but is instead arguing that the Government's delay in filing the Indictment violated his due process rights.

to meet this burden, a defendant must show that the delay "cause[d] 'substantial prejudice' to the defendant's ability to present his defense *and* [that] 'the delay was an intentional device to gain [a] tactical advantage over the accused.'" *Cornielle*, 171 F.3d at 752 (*quoting United States v. Marion*, 404 U.S. 307, 324 (1971)) (emphasis added). A defendant must make a specific and particularized showing of actual prejudice to overcome a timely indictment's presumption of validity. *See Cornielle*, 171 F.3d at 752. The possibility of faded memories, unavailable witnesses, and loss of evidence, by itself, is insufficient. *See Marion*, 404 U.S. at 325-26.

Here, defendant has not made a specific, particularized showing of substantial prejudice as a result of the Government's delay in filing the Indictment. Defendant generally contends that the almost five-year gap between the conduct charged and the filing of the Indictment has caused his own memory of relevant events to have faded, and has made it more difficult for witnesses to recall important facts of the case. He claims that important witnesses are likely no longer available. However, defendant fails to identify any specific witnesses who possess exculpatory or even relevant information about the charges; what the anticipated testimony of these witnesses would show; or why these individuals are now unavailable. *See United States v. Scala*, 388 F. Supp. 2d 396, 399-400 (S.D.N.Y. 2005) (due process claim denied where defendant could not demonstrate actual prejudice from pre-indictment delay resulting in the unavailability of two witnesses because he failed to show, beyond mere speculation, what the witnesses' testimony would have been and how he was specifically or actually prejudiced without it).

Defendant also claims that, absent the delay, he would have been able to produce phone communications and business records showing innocent or legitimate

explanations for his statements and behavior. However, defendant's failure to offer any specific details as to the content of these purported records or communications, or a specific explanation as to how they would tend to prove his innocence, is fatal to his claim of prejudice. *See United States v. Jordan*, 629 F. Supp. 3d 49, 54 (E.D.N.Y. 2022) (denying motion to dismiss indictment on basis of delay despite defendant's claims that a "lost cell phone, telephone, and beeper records" would "support his alibi", since "conspicuously absent from [defendant's] argument is any factual support for his claim."); *United States v. Valentin*, 14-CR-55, 2016 U.S. Dist. LEXIS 42630 (D. Conn. Mar 30, 2016) (rejecting defendant's claim that pre-indictment delay caused him actual prejudice due to loss of phone records that supported his defense, because "[i]n absence of any factual support, the Court has no idea what [defendant] believes the phone records contain, how they could conceivably contradict [the Government's evidence], and how those contradictions could conceivably demonstrate that [defendant] did not commit the crime[] charged."); *United States v. Birney*, 686 F.2d 102, 105-06 (2d Cir. 1982) ("The burden of demonstrating actual prejudice is on defendant, and the proof of prejudice must be definite and not speculative.").[2] Indeed, defendant's failure to show actual prejudice as a result of the pre-indictment delay is alone sufficient for the Court to deny his motion to dismiss.

Furthermore, even if defendant had shown actual prejudice as a result of the delay, which he has not, defendant has not demonstrated that the delay was either intentionally

---

[2] Defendant further submits that, had the Indictment been filed sooner, he could have cooperated against co-conspirators. This claim is speculative at best and plainly insufficient to show actual prejudice. The Government notes that defendant's claim is also contradicted by defendant's contention that the Government pursued the Indictment in July 2023 "in order to provide leverage in order to compel [defendant] to testify against an alleged co-conspirator." (Dkt. No. 15, ¶ 27)

pursued by the Government for an improper purpose or was utilized by the Government to gain a tactical advantage over him in the prosecution. *See Cornielle*, 171 F.3d at 752; *Marion*, 404 U.S. at 324.

The Government has proffered that Walker owned a trucking company in Alabama and hired an acquaintance to drive his tractor trailer in 2017. (Dkt. No. 16, pg. 7) The Government alleges that the driver later learned that he would be delivering legitimate goods as well as occasionally picking up and delivering narcotics as well as cash from the sale of narcotics. (*Id.*) The Government proffers that, on July 25, 2018, as part of a law enforcement operation, agents observed the driver distribute 17 kilograms of cocaine from Walker's truck and receive over $500,000 in exchange for the drugs. (*Id.*) In addition, Walker's truck was found to contain a secret compartment concealing $145,000 in drug proceeds. (*Id.*) At that time, the driver was arrested and Walker's truck was seized. (*Id.*)

The driver was later charged with drug conspiracy and other related crimes, in a separate case, along with a number of other individuals, not including Walker. *See United States v. Valdez, et al.*, 18-CR-138. A trial in *United States v. Valdez* was held in the fall of 2021, resulting in the conviction of several defendants. (*Id.*) The driver entered into a plea agreement with the Government on October 14, 2021, shortly before the start of the trial. *See* 18-CR-138, Dkt. Nos. 431, 432.  According to the Government, around this same time, the driver provided the Government with access to his previously locked and encrypted cell phone. (Dkt. No. 16, pgs. 7-8) The Government was then able to recover, from the driver's phone, numerous deleted messages between Walker and the driver. (*Id.*) The Government submits that these messages constituted essential corroborating evidence, against Walker, as to the instant drug conspiracy and related charges, that was

not previously available. (*Id.*) The Government indicates that the driver testified before the grand jury on April 25, 2023 and the instant Indictment was returned three months later. (*Id.*)

Courts in this Circuit have held that, in order to satisfy their burden in demonstrating a due process violation, a defendant must show that the government acted intentionally or recklessly with regard to the delay. *United States v. Santiago*, 987 F. Supp. 2d 465, 485-86 (S.D.N.Y. 2013). Where a defendant can demonstrate that the government made a "series of deliberate (not inadvertent) decisions," recklessness can be found. *Id.* However, an "[i]nvestigative delay," namely the delay caused by a prosecutor waiting until he "is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt," will not suffice. *Lovasco*, 431 U.S. at 795.

Based on the record here, including the information proffered by the Government, it appears that much of the pre-indictment delay in this case was investigatory in nature. Specifically, it seems that the Government did not uncover some of its most significant evidence against defendant until the fall of 2021, at the earliest. Defendant has offered no evidence to contradict the Government's explanation for the delay. Moreover, defendant has failed to offer any evidence suggesting that the delay was the result of intentional or reckless Government conduct, designed to provide the Government with a tactical advantage in the prosecution.

For all of these reasons, the Court recommends that the motion to dismiss the Indictment based on pre-indictment delay be denied.

### *Motion to Suppress Statements*

Defendant made statements to law enforcement following his arrest, on July 25, 2023, in Huntsville, Alabama. (Dkt. No. 4; Dkt. No. 16, pg. 23) Defendant's statements were audio-recorded and a copy of the recording has been provided to defendant and the Court. (*Id.*) In the memorandum of law in support of defendant's pretrial motions, defense counsel generally contends that defendant's statements should be suppressed because: (1) they were the product of an unlawful arrest or detention; (2) they were involuntarily made; (3) they were taken after defendant invoked his right to counsel; and (4) defendant was either not given *Miranda* warnings or did not knowingly or voluntarily waive his *Miranda* rights. (Dkt. No. 15, pgs. 28-31) No specific details are provided as to the factual or legal basis for defendant's claims. Defendant has also failed to submit an affidavit by an individual with personal knowledge of specific facts that would support a claim that his statements were obtained in violation of his Fifth, Sixth, or Fourteenth Amendment rights.

A defendant seeking suppression of evidence is not automatically entitled to an evidentiary hearing, but must make a preliminary showing of facts which, if proven, would require the granting of relief. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). To satisfy this burden, a defendant must submit an affidavit by an individual with personal knowledge of facts that would support his claim that the evidence at issue was obtained unlawfully. *United States v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967); *United States v. Ventura*, 97 Cr. 1251, 1998 WL 186737, *1 (S.D.N.Y. 1998). Such an affidavit must contain allegations that are "definite, specific, detailed and nonconjectural" and which "enable the court to conclude that contested issues of fact" would merit an evidentiary hearing." *Pena*, 961 F.2d at 339; *United States v. Longo*, 70 F. Supp. 2d 225, 248 (W.D.N.Y. 1999).

Here, defendant has failed to submit an affidavit from someone with personal knowledge of relevant facts in support of his motion to suppress statements. *United States v. Perryman*, 12-CR-0123, 2013 U.S. Dist. LEXIS 111117 (E.D.N.Y. Aug. 7, 2013) ("Courts in this Circuit have repeatedly denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge.") (internal citations omitted); *United States v. Militello*, 13-CR-165, 2013 U.S. Dist. LEXIS 175400 (W.D.N.Y. Nov. 15, 2013) (denying motions to suppress evidence and statements because they were unaccompanied by an affidavit (or declaration) from defendant). Statements and legal arguments by defense counsel are insufficient to create issues of fact in support of a suppression claim. *See United States v. Tata*, 11-CR-6083, 2011 U.S. Dist. LEXIS 151703 (W.D.N.Y. Nov. 21, 2011) ("An attorney's affidavit made without personal knowledge is insufficient to create an issue of fact requiring an evidentiary hearing.").

Moreover, defendant's motion fails to raise any specific factual basis for suppression. Indeed, defendant's conclusory arguments that his statements were involuntary, or taken in violation of his right to counsel, made without any factual details as to the basis for these claims, are inadequate. *See United States v. Mathurin*, 148 F.3d 68, 71 (2d Cir. 1998) ("A bald assertion that a statement was involuntary, for example, could be based on any number of factual premises such as coercion, lack of *Miranda* warnings, or lack of competence…[w]ithout specification of the factual basis for such a characterization, the district court is not required to have a hearing."); *United States v. Molina-Rios*, 15-CR-00122, 2016 U.S. Dist. LEXIS 182722, *16-17 (W.D.N.Y. April 26, 2016) (recommending motion to suppress statements be denied without a hearing where

no specifics were offered as to counsel's contention that defendant's statements were "involuntary", "taken without benefit of proper *Miranda* warnings", and "the product of an unlawful arrest" and there was no affidavit or declaration in support of the motion from defendant).[3] Because defendant has failed to raise a factual basis supporting his claim that his constitutional rights were violated, the Court recommends that his motion to suppress statements be denied.

Even if defendant had submitted an affidavit in support of his suppression argument, the Court would still recommend that the motion be denied. Defendant's statements to law enforcement were made following his arrest on July 25, 2023, pursuant to a federal arrest warrant. The arrest warrant was issued based on the Indictment, which constitutes a finding of probable cause by the grand jury. *See United States v. Schniter*, 567 F.2d 536 (2d Cir. 1977). Thus, there is no merit to the claim that defendant's post-arrest statements were the product of an unlawful arrest or detention.

In addition, the Court has conducted an *in camera* review of the audio recording of defendant's post-arrest statements. At the beginning of the recording, Special Agent Oswald introduces himself to defendant and indicates that he works for the Department of Homeland Security Investigations in Buffalo, New York. Agent Oswald explains the

---

[3] The Court's Scheduling Order provides that "[a]ny motion to suppress statements or physical evidence must initially be accompanied by an appropriate affidavit (or declaration) from an individual with personal knowledge, failing such the Court will normally recommend that the motion be denied without an evidentiary hearing." (Dkt. No. 9) Federal Rule of Criminal Procedure 47(d) requires the moving party to "serve any supporting affidavit with the motion." During oral argument, defense counsel indicated that he had recently received the audio recording of defendant's statements and had not yet listened to the recording or discussed the statements in detail with defendant. The Court gave defense counsel over two weeks to supplement his suppression motion with more details as to the basis for suppression as well as with an affidavit by someone with personal knowledge, should counsel deem it appropriate after reviewing the recording. Defense counsel has not filed any supplemental motion or an affidavit.

charges in the Indictment to defendant and further explains that defendant was arrested pursuant to a warrant issued as a result of the Indictment. Agent Oswald informs defendant that he and another agent would like to speak with defendant about the charges, but that defendant has the right not to talk to them.

Agent Oswald then informs defendant: "I'm going to read you your rights, and if you want to talk to us after that it's up to you." Oswald proceeds to read defendant his *Miranda* warnings slowly and clearly. Oswald next tells defendant: "I'll let you read these if you want." Oswald then asks defendant if he has any questions about his rights. Defendant's response to Oswald's question is somewhat difficult to hear on the recording, but defendant seems to state, "no sir." Oswald next asks defendant if he understands his rights. Defendant seems to provide a short response but the content of the response is inaudible on the recording.[4] Following this response by defendant, Agent Oswald immediately indicates that the *Miranda* warnings are available for defendant to refer to "at any time." At no time during this exchange can defendant be heard stating that he does not understand his rights, that he wants a lawyer, or that he does not wish to speak with the agents. Likewise, none of Oswald's responses to defendant during this exchange suggest that defendant requested an attorney, asked any questions about his rights, or otherwise indicated that he did not understand the *Miranda* warnings.

Immediately after the exchange regarding defendant's *Miranda* rights, defendant proceeds to speak with Oswald and another agent about the charges against him and the alleged drug conspiracy. The interview lasts for over 50 minutes, during which time

_____

[4] The majority of defendant's other responses and statements are audible on the recording. Thus, it may be the case that defendant responded to Agent Oswald's question regarding his understanding of the *Miranda* warnings by nodding his head or providing some other type of non-verbal response.

defendant and the agents remain calm and speak in conversational tones. No express or implied threats are made by the agents at any time and there is no evidence of coercion by law enforcement. At no time during the interview does defendant ask to stop speaking with the agents nor does he request a lawyer. In fact, after speaking freely with the agents for over 45 minutes, defendant states "if I was afraid or had something to hide[,] I would have told you to get me an attorney right then when you said I could choose to talk if I wanted to."

A waiver of *Miranda* rights may be express or implied by a defendant's course of conduct. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755 (1979). Thus, an "express written or oral statement of waiver of the right to remain silent or of the right to counsel" is not required. *Id.* Indeed, a valid *Miranda* waiver may be inferred from "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Id.* To that end, "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis v. Thompkins*, 560 U.S. 370, 388-89, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010). This is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 2262; *see also United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990) (same).

The record here indicates that defendant understood his rights and voluntarily waived them before speaking with law enforcement on July 25, 2023. It is apparent from the recording that Agent Oswald read defendant his *Miranda* rights and provided him with

a written copy of those rights. Oswald also made clear to defendant that he was not required to speak with law enforcement. When defendant is asked if he has any questions about his rights, he seems to respond with "no, sir." While defendant's response to Oswald's question as to whether he understood his rights is not audible, the totality of circumstances indicates that defendant fully understood his rights. The exchange between Oswald and defendant logically suggests that defendant gave some type of either verbal or non-verbal indication that he understood his rights. After Oswald reads the *Miranda* warnings and defendant responds, Oswald does not offer any clarifying statements or further explanation, and defendant immediately engages in a lengthy interview with the agents. There is no evidence that Agent Oswald or any other member of law enforcement threatened or coerced defendant in any manner and defendant never requests a lawyer or asks to end the interview. In fact, defendant specifically states, at the end of the interview, that had he been reluctant or afraid to speak with the officers, he would have asked for a lawyer in the beginning of the interview as suggested or offered by Agent Oswald. This statement leaves the Court with little doubt that defendant fully understand his *Miranda* rights before providing uncoerced statements to law enforcement. *See United States v. Cruz*, 10-CR-6096, 2015 U.S. Dist. LEXIS 56265 (W.D.N.Y. Feb. 27, 2015) (finding that defendant's behavior and actions after being advised of his rights supported a finding that he understood his right to remain silent and noting "[t]he fact that [defendant] did not respond to [the officer's] waiver questions does mean that [defendant] did not understand his rights.").

For all of these reasons, the Court recommends that defendant's motion to suppress statements be denied.

## ***Additional Suppression Motions***

Defendant reserves the right to move to suppress any undisclosed evidence obtained from the data contained on his cell phone. (Dkt. No. 15, pg. 32) During oral argument, the Government indicated that no warrant had been sought or obtained for the contents of defendant's phone, and therefore no evidence derived from the data or contents of defendant's phone would be introduced at trial. Thus, to the extent defendant moves to suppress evidence obtained from a search of his phone, his request should be denied as moot.

Defendant also moves to suppress any "undisclosed evidence obtained from wiretaps, pen registers, or any similar devices." (Dkt. No. 15, pgs. 31-32)

The Government indicates that defendant has been provided with Title III recordings and transcripts relevant to this case. However, during oral argument, the Government represented that defendant himself was not the subject of any Title III interception order. Further, defendant has not shown that his voice was intercepted on any wiretap that will be introduced at trial. Thus, defendant has not established standing to challenge any anticipated wiretap evidence. *See United States v. Bellomo*, 954 F. Supp. 630, 639 (S.D.N.Y. 1997) ("Absent a sworn statement by [defendant] or someone with personal knowledge averring that [defendant's] voice was intercepted on the cellular phone, he lacks standing to seek suppression of the evidence that the wiretap on that phone produced."); *United States v. De Leon-Navarro*, 10-CR-188, 2012 U.S. Dist. LEXIS 93393 (W.D.N.Y. June 15, 2012) ("this defendant was not a named target or interceptee on any of the Title III interception orders at issue in this case[;] . . . [a]s defendant has failed to aver that his voice was intercepted, it is recommended that his motion to

suppress be denied for lack of standing").[5] Further, defendant has not pointed to any specific Title III order which he is challenging here, nor does he allege how any Title III order germane to this case either lacks probable cause or was otherwise defective. Thus, to the extent that defendant is moving to suppress any wiretap evidence, his motion should be denied.

Lastly, the Electronic Communications Privacy Act ("ECPA") governs the use of pen registers as well as trap and trace devices. *See* 18 U.S.C. §§ 3121-3127; *United States v. Stegemann*, 40 F. Supp. 3d 249 (N.D.N.Y. 2014). Couts have held that the use of pen registers as well as trap and trace devices, even if in violation of the ECPA, does not implicate the Fourth Amendment. *See United States v. German*, 486 F.3d 849, 852-53 (5th Cir. 2007). Accordingly, "[s]uppression of evidence is not a remedy for alleged violations of the ECPA." *Stegemann*, 40 F. Supp. 3d at 270-71. *See also Smith v. Maryland*, 442 U.S. 735, 739-46, (1979) (it is well-settled that use of pen register devices does not violate a defendant's expectation of privacy and therefore need not be authorized by a warrant based on probable cause). Thus, to the extent that defendant seeks to suppress evidence derived from any pen registers used in this case, his request should be denied.[6]

---

[5] During defendant's post-arrest statement, Agent Oswald plays a voice mail message that defendant left on the driver's cell phone. However, there is no indication that this message was obtained pursuant to a Title III order. Moreover, the Government has proffered that numerous messages between defendant and the driver were uncovered when, around the time the driver entered his plea in the related case, the driver provided the previously encrypted contents of his cell phone to the Government.

[6] Defendant points to "Grand Jury Exhibit 31" which, according to defendant, lists a "target number" attributable to defendant. During oral argument, the Government indicated that Grand Jury Exhibit 31 is likely a summary document created by law enforcement annotating records obtained from the phone company. To the extent defendant is moving to suppress this document, such arguments may be made to the District Court, if and when the Government seeks to use this exhibit at the time of trial.

## *Omnibus Discovery Demands*

### *Discovery and Inspection*

Defendant moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. No. 15, pgs. 10-20) Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded, or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Defendant's Rule 16 requests include, *inter alia*, a copy of defendant's prior record; papers, documents, photographs and other tangible things material to the defense; reports or results of any relevant physical or mental examination or scientific test; any video or audio identification procedure utilized in the case; any relevant state or federal police investigative reports; all monitoring logs, summaries or other documents concerning intercepted or observed communications or pen registers; any video or audio tapes or photographs made in connection with the investigation; and any other physical

evidence seized. (*Id.*) Defendant also requests the names, identities, and qualifications of any expert witnesses the Government intends to call at trial, as well as any reports, results of tests, experiments, or examinations which the Government intends to offer as evidence at trial. (*Id.*)

The Government responds that it has provided all discovery required under Rule 16 or has made such discovery available for inspection by defense counsel. (Dkt. No. 12, pgs. 16-3-6) To that end, the Government has made available to defendant, *inter alia*, trial exhibits and certain 3500 material used in the case of *United States v. Valdez*, 18-CR-138; the grand jury exhibits entered in this case; information and communications recovered from the driver's phone; defendant's criminal history; toll records; report of defendant's arrest and interview as well as the audio recording of defendant's post-arrest statement; laboratory reports and photo arrays presented to the grand jury; and transcripts and material obtained from Title III, pen registers, and search warrant applications (*Id.*) The Government states that it has already notified defendant as to some of its anticipated expert witnesses and that it will timely provide the credentials and methods of all expert witnesses. (*Id.*) The Government states, in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A), that it intends to use, at trial, all items of evidence that defendant has been provided with or made aware of. (*Id.*)

Based upon the representations made by the Government, defendant's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations pursuant to Rule 16 and its notice obligations pursuant to Rule 12 continue up through and during trial. *See* Fed. R. Crim. P. 16(c) and 12(b)(4)(A). Finally, the Government is expected to comply with all requirements in Rule 16, Federal

Rules of Evidence 702, 703, and 704, and Judge Sinatra's pretrial order as they apply to expert testimony.

### Brady/Giglio Material

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny. (Dkt. No. 15, pgs. 21-27)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. S*ee Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id*. at 144.

Here, the Government states that it is fully aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to provide

such material, if and when it becomes aware of it. (Dkt. No. 16, pg. 19) Further, the Government agrees to provide *Giglio* material prior to trial, in accordance with the District Court's scheduling order, and no later than when the Government produces and delivers the *Jencks* Act material in this case. (*Id.* at pgs. 13-14)

Given the Government's representations and for the reasons just stated, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

### Disclosure of Jencks Material

Defendant requests early identification and disclosure of Government witnesses. (Dkt. No. 15, pgs. 15, 27-28) He also requests relevant impeachment material as to all Government witnesses. (*Id.*)

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Moreover, the Second Circuit has held that "in the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case," the request for a pretrial witness list should be denied. *Id.* at 13-140. Here, defendant has failed to make a particularized showing of the need for early disclosure of the Government's witness list.

Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the

government's possession and relate to the subject matter of the witness's direct testimony ("*Jencks* material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that it will produce *Jencks* material two weeks before commencement of the trial. (Dkt. No. 16, pg. 19) The Government represents that it will also disclose *Giglio* material at that same time. (*Id.* at pg. 21) In light of these representations, defendant's request for disclosure of witness statements is denied as moot.

## Bill of Particulars

Defendant moves for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. No. 15, pgs. 9-10) Defendant seeks, *inter alia*, information as to whether the Government alleges that defendant acted as a principal or accomplice as to the crimes charged; the Government's intended proof regarding distribution or intended distribution; the exact locations in the Western District of New York and elsewhere where the crimes are alleged to have been committed; the other individuals alleged to be involved in the conspiracy; and whether it is alleged that defendant's possession of the drugs was actual or constructive. (*Id.*)

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006).

The charges here are neither complex nor difficult to understand. The Indictment provides the relevant dates of the alleged conspiracies as well as the specific narcotics involved and the approximate amounts. (Dkt. No. 1) The Government has turned over substantial discovery in this case, as well as trial exhibits and 3500 material in a closely related case. The information provided in the Indictment, coupled with the voluminous discovery already provided to defendant, is sufficient to inform defendant of the charges

against him, prepare a defense, avoid surprise at trial, and ensure against double jeopardy.

The additional details sought by defendant amount to an attempt to use a bill of particulars as a discovery device. *See e.g., United States v. Biaggi*, 675 F. Supp. 790, 809 (S.D.N.Y. 1987) (defendants request for "each alleged date, time, person present, place, nature of conversation [and] amount" is an "impermissible attempt to compel the Government to provide evidentiary details of its case."); *United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) (the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars since the government "is not required to prove exactly when or how a conspiracy formed or when or how a particular defendant joined the scheme"); *United States v. Walker*, 922 F Supp. 732, 739 (N.D.N.Y. 1996) (overt acts in furtherance of a conspiracy need not be disclosed); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (finding that the district court acted well within its discretion denying defendant's request for a bill of particulars specifying when he joined the conspiracy, the identity of unindicted co-conspirators, and the precise dates and locations he was alleged to have transported heroin). For these reasons, defendant's request for a bill of particulars is denied.

### Disclosure of Grand Jury Material

Defendant moves for disclosure of all grand jury minutes pursuant to Rule 6 of the Federal Rules of Criminal Procedure. (Dkt. No. 15, pgs. 6-8)

"The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991) (citations

and punctuations omitted). Further, grand jury proceedings are entitled to a "presumption of regularity", *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974), and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." R. *Enterprises, Inc.*, 498 U.S. at 300. Moreover, law in this Circuit is clear that grand jury proceedings receive a presumption of secrecy and closure. *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996). Because of these principles, a defendant seeking disclosure of grand jury minutes must show a particularized need, in that (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured to cover only what is needed. *Id.*

Defendant contends that disclosure of the grand jury material is necessary because of the pre-indictment delay that occurred in this case. However, as explained in detail above, defendant has not shown that he suffered any actual prejudice as a result of the delay nor has he put forth any evidence of improper motive on the part of the Government with respect to the timing of the Indictment. The Government has provided a logical explanation for the delay which is supported by facts in the record. There is no indication of misconduct or irregularity with respect to the grand jury proceedings. Moreover, it appears that defendant has already been provided the grand jury exhibits relevant to this case. For these reasons, the Court finds that defendant has not satisfied the high burden of demonstrating a particularized need for the disclosure of additional grand jury material, nor has he established any potential basis to dismiss the Indictment based on the grand jury proceedings.

*Disclosure of Informants' Identities and Files*

Defendant moves for disclosure of informant information. (Dkt. No. 15, pg. 28) The Government objects to this request on the grounds that defendant has not shown a particularized need for the information.

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Rovario v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendant here has not met his heavy burden with respect to early disclosure of informant identities or statements. He does not offer examples of specific testimony or information these informants might provide, nor does he explain how such a disclosure is necessary or material to his defense. If and when the informants are to be called as

23

witnesses at trial, defendant will have access to their identities as well as all relevant impeachment material, prior statements, and notes of their interviews. In addition, if the informants reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial. Thus, defendant's motion for disclosure of informant information and statements is denied.

### _Identification Procedures_

Defendant requests that the Government disclose information as to any police-arranged identification procedures used in this case, including information as to any witnesses who identified the mugshot of defendant, captured in Grand Jury Exhibit 1. (Dkt. No. 15, pg. 31)

The Government responds that it has provided defendant with documents relating to the identification of defendant and that both witnesses who identified defendant did so based upon a years-long prior relationship with him. (Dkt. No. 16, pg. 18) Therefore, to the extent that defendant is requesting a _Wade_ hearing, his motion appears to be moot and is denied. _See United States v. Stephenson_, 17-CR-00199, 2020 WL 2115719 (W.D.N.Y. Feb. 24, 2020) (_Wade_ hearings not required for confirmatory identifications where the witness is sufficiently familiar with defendant so as to negate the possibility of suggestiveness); _United States v. Salmon-Mendez_. 992 F. Supp. 2d 340, 342-43 (S.D.N.Y. 2014) (relying on the government's representation that an identifying witness had a prior relationship with the defendant in denying request for a _Wade_ hearing). Finally, should an issue arise with respect to any out-of-court identification procedure, defendant may renew this motion before Judge Sinatra at the time of trial.

*Leave to File Additional Motions*

Defendant moves to reserve the right to make further motions as necessary. (Dkt. No. 15, pg. 32) To the extent defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

*Government's Motion for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendant and which defendant intends to introduce as evidence at trial; the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case; and a summary of any testimony defendant intends to offer based upon Rule 702, 703, or 705 of the Federal Rules of Criminal Procedure at trial. (Dkt. No. 16, pg. 25) The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant James Walker's motions to dismiss the Indictment and to suppress evidence be denied. (Dkt. No. 15) It is ordered that defendant James Walker's omnibus discovery demands are decided in the

manner detailed above (Dkt. No. 15) and that the Government's request for reciprocal discovery is granted (Dkt. No. 16).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*  See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."*  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

26

**SO ORDERED**.


Dated:  March 5, 2024
        Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge